82 F.3d 417
 NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Roger BOGGS, Petitioner-Appellant,
v.
Anthony BRIGANO, Warden Respondent-Appellee.
 No. 94-4000.
 United States Court of Appeals, Sixth Circuit.
 April 4, 1996.
Concurrence as Amended April 12, 1996.
 
 On Appeal from the United States District Court for the Southern District of Ohio, No. 94-00205; Rubin, Judge.
 S.D.Ohio
 REVERSED.
 Before: KEITH and BATCHELDER, Circuit Judges; and ROSEN, District Judge.*
 ROSEN, D.J., delivered the opinion of the Court in Part I, in which KEITH, J. and BATCHELDER J. concurred. ROSEN, J. also delivered a separate opinion appearing as Part II, and BATCHELDER, J. filed a separate concurring opinion.
 
 
 1
 ROSEN, District Judge.
 
 
 2
 Petitioner/Appellant Roger P. Boggs appeals the district court's denial of his petition for a writ of habeas corpus. The district court determined that Boggs failed to exhaust his state court remedies and therefore dismissed the habeas corpus action without prejudice. For the following reasons, we reverse the district court's decision and remand the case for consideration of the merits of the petition.
 
 I.
 INTRODUCTION
 
 3
 Petitioner Roger P. Boggs was convicted by a jury of rape, kidnapping, and felonious assault in an Ohio state court on May 16, 1989. He was subsequently sentenced to consecutive terms of imprisonment of 15-25 years for rape,[1] and 8-15 years for felonious assault. Boggs is currently incarcerated at the Warren Correctional Institution in Lebanon, Ohio.
 
 
 4
 On March 17, 1994, after numerous hearings and appeals in Ohio courts, Boggs filed a petition for a writ of habeas corpus with the United States District Court for the Southern District of Ohio, Western Division. Boggs' case was assigned to U.S. Magistrate Judge Jack Sherman, Jr., who recommended that Boggs' petition be dismissed without prejudice due to Boggs' purported failure to exhaust all of his state remedies. Over Boggs' objection, the district court adopted the Magistrate Judge's Report and Recommendation without comment by order dated August 22, 1994. Boggs now brings this appeal, contending that all of his state court remedies have been exhausted.
 
 
 5
 In his petition for a writ of habeas corpus, Boggs argued that he was denied his Sixth Amendment right of confrontation because he was not permitted to confront and cross-examine his accuser or present evidence about her having on a previous occasion falsely accused another man of rape.
 
 FACTUAL AND PROCEDURAL BACKGROUND
 
 6
 Roger Boggs was tried before a jury in the Adams County, Ohio Court of Common Pleas in May 1989 for the rape and felonious assault of Elizabeth Berman in December 1988. The record of the state proceedings reveals that Ms. Berman is a 34-year-old drug user who has a 20-year history of mental illness. She testified that she suffers from delusions and hallucinations. She further admitted during her trial testimony that, for many years, she has been under psychiatric treatment for schizophrenia and depression, and that she has " 'psychotic episodes' in which she would 'lose touch with what's real and what's not real.' " State v. Boggs, 624 N.E.2d 204, 206 (Ohio Ct.App.1993).
 
 
 7
 The only evidence identifying Boggs as Berman's attacker was Ms. Berman's own testimony. Neither hair (other than Berman's) nor semen was found on Ms. Berman's person or clothing, or anywhere in her apartment (the scene of the alleged rape).
 
 
 8
 Testimony at trial indicated that Ms. Berman initially refused to disclose the identity of her assailant. It was only after prodding by her mother that Ms. Berman named Boggs as her attacker.
 
 
 9
 In describing her attacker at trial, Berman testified that he had been naked in front of her for most of the time and that he had two tattoos--one on his arm and one on his shoulder. At trial, Boggs took off his shirt and displayed to the jury that he had 14 large tattoos covering his entire upper torso. Ms. Berman also testified that she did not notice whether her attacker had any facial hair. The trial evidence established that, at the time of the attack, Boggs had a long, full beard.
 
 
 10
 At trial, Boggs' attorney sought to question Ms. Berman about an allegedly false accusation of rape she purportedly had made about another man approximately one month before she accused Boggs of rape. In addition to cross-examination of Ms. Berman, Boggs also sought to introduce the testimony of two witnesses, Wilma Copas and Rick Yazell, concerning the prior false accusation. Ms. Copas would have testified that Ms. Berman told her that she had been raped by Mr. Yazell. Mr. Yazell would have testified that the accusation was untrue. The trial court, however, prohibited all questioning concerning the alleged accusation, finding that such inquiry violated Ohio's Rape Shield Law. OHIO REV.CODE ANN. § 2907.02(D) (Anderson 1989).[2]
 
 
 11
 Boggs was ultimately convicted by the jury. After his conviction, Boggs filed a timely appeal with Ohio's Fourth District Court of Appeals. He raised six assignments of error on appeal, including the following: "The court committed prejudicial error in violation of the Defendant's right to confrontation of witnesses by restricting the cross-examination of the complaining witness."
 
 
 12
 Boggs argued that the trial court had improperly restricted cross-examination of Ms. Berman in two ways: first, by forbidding questions concerning her prior use of LSD; and second, by forbidding questions concerning the alleged prior false accusation of rape. For purposes of this appeal, only the second matter is of significance.
 
 
 13
 In the brief Boggs filed before the court of appeals, he presented the following argument:
 
 
 14
 The Defendant submits that the offer of evidence that the complaining witness had, a short time before the alleged crime, accused another of the same crime ... is not violative of the Rape Shield Laws, and, even if it were ... there are circumstances in which the application of the Rape Shield Statute violates the rights of the Defendant, as is the case here.
 
 
 15
 On May 29, 1991, the Ohio Court of Appeals reversed Boggs' conviction based on this argument. In reaching its conclusion, that court relied primarily on its determination that an accusation of rape is a verbal communication, not a "sexual activity" within the meaning of Ohio's Rape Shield Law.[3]
 
 
 16
 The court also noted that "[i]t is well settled that criminal defendants have the right to confront the witnesses against them under both the Sixth Amendment to the United States Constitution and under ... the Ohio Constitution." Boggs, 1991 WL 13735 at * 8. It found that Boggs' conviction turned substantially upon his identification by Elizabeth Berman. Id. The court cited with approval the following language: " '[W]here the verdict necessarily turned on the credibility of the complainant, it is imperative that the defendant be given an opportunity to place before the jury evidence so fundamentally affecting the complainant's credibility.' " Id. at * 7 (quoting People v. Mikula, 269 N.W.2d 195, 199 (Mich.Ct.App.1978)). The court further opined, "[I]t is difficult to imagine a more 'imperative' category of defense evidence than that which shows the proclivity of a complainant to make rape accusations." Id. (noting the view of the Michigan Court of Appeals in Mikula ). Thus, the courtof appeals' reversal rested upon both statutory and constitutional grounds.[4]
 
 
 17
 The case was then certified for appeal to the Ohio Supreme Court. The principal issue considered by that court was whether the rape shield provisions of OHIO REV.CODE § 2907.02(D) prohibit a defendant from cross-examining an alleged rape victim about prior false rape accusations she is alleged to have made. State v. Boggs, 588 N.E.2d 813 (Ohio 1992). More specifically, the court stated:
 
 
 18
 A threshold determination required in this case is whether an alleged victim in a sexual assault case can be cross-examined as to prior false accusations of rape. If the answer to that question is in the affirmative, then the next logical inquiry is to what extent cross-examination may be permitted. A related question is whether the defendant may bring in extrinsic evidence that the victim had made prior false accusations of sexual assault. Therefore, the issues in this case must be addressed in light of Evid.R. 608(B)....
 
 
 19
 Id., 588 N.E.2d at 816.
 
 
 20
 On April 15, 1992, the Ohio Supreme Court issued its ruling determining that false accusations of rape where no sexual activity is involved, do not fall within the rape shield statute. Id. Rather, the court determined that cross-examination of a rape victim regarding prior accusations of rape is governed by Evid.R. 608(B). Id. The court then went on to set forth a procedure for trial courts to follow when a rape defendant seeks to cross-examine the victim regarding such prior accusations:
 
 
 21
 [I]f defense counsel inquires of an alleged rape victim as to whether she has made any prior false accusations of rape, and the victim answers no, the trial court would have the discretion to determine whether and to what extent defense counsel can proceed with cross-examination. However, if the alleged victim answers in the affirmative, the trial court would have to conduct an in camera hearing to determine whether sexual activity had been involved. If the trial court determined that the accusations were entirely false (that is, that no sexual activity had been involved) the trial court would then be permitted to exercise its discretion in determining whether to permit defense counsel to proceed with cross-examination of the alleged victim. We therefore hold that where an alleged rape victim admits on cross-examination that she has made a prior false rape accusation, the trial judge shall conduct an in camera hearing to ascertain whether sexual activity was involved and, as a result, would be prohibited by R.C. 2907.02(D), or whether the accusation was totally unfounded and therefore could be inquired into on cross-examination pursuant to Evid.R. 608(B).
 
 
 22
 Id. at 816-17.
 
 
 23
 Importantly, the Ohio Supreme Court went on to establish what appears to be a per se rule that prior false allegations of sexual assault "are an entirely collateral matter", and therefore, "may not be proved by extrinsic evidence." Id. at 817. It was in the context of considering whether or not Boggs should be permitted to present evidence of false accusations that the court considered, albeit briefly, Boggs' constitutional arguments. The court stated:
 
 
 24
 The rights to confront witnesses and to defend are not absolute and may bow to accommodate other legitimate interests in the criminal process.... Evid.R. 608(B) provides a well-established rule of law that protects a legitimate state interest in preventing criminal trials from bogging down in matters collateral to the crime with which the defendant was charged.
 
 
 25
 Id. (Citation omitted).
 
 
 26
 Thus, the court held that before cross-examination of a rape victim as to prior false rape accusations may proceed, the trial judge must hold an in camera hearing to determine whether or not such testimony would involve sexual activity, and was thus inadmissible under the Rape Shield Law, or whether the accusations were totally unfounded and therefore admissible for impeachment of the victim. Id. Accordingly, the court reversed and remanded Boggs' case to the trial court to conduct such an in camera hearing. Id. at 818.
 
 
 27
 On May 11, 1992, pursuant to the Supreme Court's order, the trial court held an evidentiary hearing to consider whether or not Boggs should have been permitted to cross-examine his accuser on the matter of her alleged prior false accusation of rape. See, State v. Boggs, 624 N.E.2d 204, 207 (Ohio Ct.App.1993). At the hearing, Ms. Berman simply denied that she had made any prior accusations. Id. Boggs sought to introduce the contradictory evidence of Mrs. Copas, i.e., the testimony that Ms. Berman had previously made rape accusations against Rick Yazell, and the testimony of Rick Yazell that such accusations were false. Id. at n. 2. The trial court refused to permit Boggs to introduce this evidence. Id. Consequently, the court found no reason to reopen the case " 'in view of the answers given by ... Ms. Berman,' " and denied Boggs' request for a new trial. Id.
 
 
 28
 Boggs then began the appeal process anew. He returned to the Ohio Court of Appeals, assigning the following errors:
 
 
 29
 I. The trial court erred in refusing to allow testimony at the evidentiary hearing from appellant's witnesses as to the alleged victim's prior false accusations of sexual misconduct. Said error deprived appellant of his Ohio and United States constitutional rights to present a defense and to due process of law.
 
 
 30
 II. The trial court erred in refusing to grant Mr. Boggs a new trial. Said error deprived Mr. Boggs of his Ohio and United States constitutional rights to confrontation, cross-examination and due process of law.
 
 
 31
 Id. at 206.
 
 
 32
 On May 6, 1993, the Court of Appeals again reversed the trial court. The appellate court concluded that, although Boggs could not introduce extrinsic evidence of false allegations at trial, he should have been permitted to introduce such evidence at the in camera hearing. The court explained:
 
 
 33
 Our interpretation of the Boggs [Ohio Supreme Court] decision is that it adopts a two-stage procedure to be employed by the courts in handling allegations of prior false rape accusations....
 
 
 34
 ....
 
 
 35
 The second stage of the proceedings is the in camera hearing (out of the presence of the jury) where the trial court is to actually make the determination of whether the prior false rape accusation involved "sexual activity." Although the Supreme Court has ruled that extrinsic evidence of prior false rape accusations is inadmissible during trial, no such ruling was made with respect to the in camera hearing. This is consistent with [the] general evidence principles providing that the rules, including Evid.R. 608(B), do not apply to preliminary determinations of evidentiary admissibility. See Evid.R. 101(C) and 104(A). Indeed, it is difficult to imagine how a trial court could even make a fair and well-reasoned factual determination of whether the accusations involved "sexual activity" without considering extrinsic evidence.
 
 
 36
 ....
 
 
 37
 The court below was ordered to conduct an in camera hearing to determine whether the alleged prior false rape accusations were unfounded. The instructions on remand expressly noted the absence of any evidence of prior false rape accusations from the record and would seem to indicate that such evidence was to be taken.... For these reasons, we hold that appellant was entitled to introduce extrinsic evidence below in order to carry his burden of showing that the prior false rape accusations were unfounded and did not involve "sexual activity." The lower court erred in prohibiting the introduction of such evidence and the two assignments of error are sustained to that extent.
 
 
 38
 Id. at 207-08 (citations omitted).
 
 
 39
 Because the Court of Appeals found that the trial court incorrectly prohibited Boggs from introducing evidence contradicting Ms. Berman's denial of having previously made any accusations of rape, it reversed the trial court and remanded the case with instructions:
 
 
 40
 The judgment of the trial court is reversed and the matter is remanded for further proceedings. Appellant is to be allowed to present extrinsic evidence that prior rape accusations were made and that they were false. The court must then determine whether such allegations were made and, if so, whether they were "unfounded" (i.e., did not involve "sexual activity"). If the accusations were unfounded, and did not involve sexual activity, appellant should have been permitted to cross-examine the witness on this issue before the jury and a new trial must be ordered. If the accusations were not unfounded, then cross-examination is precluded by the rape shield statute and the judgment should be reinstated.
 
 
 41
 Id. at 210.
 
 
 42
 The Court of Appeals also considered Boggs' constitutional argument, and--based on its conclusion that the Supreme Court had already decided the matter--rejected it. The court stated:
 
 
 43
 The remainder of appellant's arguments challenge the constitutionality of a rape conviction in which the defendant is prohibited from exploring prior false rape accusations alleged to have been previously made by a rape claimant. These arguments are consistent with our original disposition of this case. [Previously], this court held that confrontation rights under the Sixth Amendment to the United States Constitution required that inquiry be allowed in such cases where the conviction depended substantially, if not completely, on testimony by the alleged victim. We also found nothing in Evid.R. 608(B) which would preclude the introduction of impeachment evidence if the alleged victim denied having made the prior rape accusation. Since our previous decision in this case, other jurisdictions continue to hold, as we did, that prior false accusations of sexual misconduct must be admitted either as an exception to the evidentiary rules, or over any evidentiary rule to protect a criminal defendant's constitutional rights.
 
 
 44
 ....
 
 
 45
 However, the Ohio Supreme Court expressly considered the issue and found no violation of appellant's constitutional rights to confrontation because evidence of prior false rape accusations are deemed to be " 'of minimal, if any, probative effect.' " Thus, the court reasoned, such evidence could be excluded in view of the notion that the right to confront witnesses is not absolute and may "bow" to accommodate other interests. This demonstrates that the Supreme Court did consider the pertinent constitutional issues and found them unpersuasive.
 
 
 46
 Id. at 208-09 (citations omitted).
 
 
 47
 After considering and rejecting an argument made by Boggs that the Ohio Supreme Court's discussion of the constitutional issue was dicta and, therefore, should be disregarded, the Ohio Court of Appeals concluded by stating:
 
 
 48
 This court is bound by decisions of the Ohio Supreme Court. Any further relief on this issue must be sought in the United States Supreme Court or obtained in federal habeas corpus proceedings initiated pursuant to the Lemmon case. The constitutional issues raised in the first and second assignments of error are, accordingly, overruled.
 
 Id. at 210.[5]
 
 49
 At this point, the issues were bifurcated. On July 29, 1993, Boggs appealed the court of appeals' decision on the constitutional arguments to the Ohio Supreme Court[6]; but the trial court proceedings continued as ordered.
 
 
 50
 On August 3, 1993, after a second trial-court hearing held on July 16, 1993, that court denied Boggs' request for a new trial and reaffirmed his convictions, finding that the victim had shown by clear and convincing evidence at the evidentiary hearing that she had not made any prior accusations of rape. Boggs did not appeal this decision.
 
 
 51
 Then, on November 24, 1993, the Ohio Supreme Court declined to hear the constitutional issue on appeal for a second time, stating:
 
 
 52
 Upon consideration of the motion for leave to appeal from the Court of Appeals for Adams County, and the claimed appeal as of right from said court, it is ordered by the Court that the motion is overruled and the appeal is dismissed sua sponte for the reason that no substantial constitutional question exists therein.
 
 
 53
 State v. Boggs, No. 93-1334 (Ohio Sup.Ct. Nov. 24, 1993).
 
 
 54
 Boggs then instituted this habeas corpus action pursuant to 28 U.S.C. § 2254. As indicated above, the District Court adopted without comment the Magistrate Judge's Report and Recommendation recommending that Boggs' habeas corpus action be dismissed for failure to exhaust state remedies. In his three-page Report and Recommendation, the Magistrate Judge gave a brief history of the proceedings in the Ohio courts and a short recitation of the law. He then stated:
 
 
 55
 In this case, petitioner did not exhaust his state remedies prior to filing this habeas corpus action, because he never appealed the trial court's decision denying him a new trial after the second evidentiary hearing was held as ordered by the Ohio Court of Appeals. Moreover, it appears that an avenue remains open to petitioner in the state courts to present his claims for habeas corpus relief. In this action, petitioner's claims stem from his alleged inability at trial to present evidence that the victim had made prior false accusations of sexual misconduct. The trial court's decision to deny a new trial based on the evidence presented at the second evidentiary hearing directly relates to these claims for habeas relief. Petitioner, therefore, has the opportunity to seek review of his claims for relief in the state courts by filing a motion for delayed appeal from the trial court's ruling to the Ohio Court of Appeals....
 
 
 56
 The Report and Recommendation does not elaborate further on the conclusions drawn in this paragraph.
 
 ANALYSIS
 
 57
 "The doctrine of exhaustion requires that the same claim under the same theory be presented to state courts before raising it in a habeas petition." Pillette v. Foltz, 824 F.2d 494, 497 (6th Cir.1987); see also Anderson v. Harless, 459 U.S. 4, 6 (1982). This judicially created requirement has been codified in 28 U.S.C. § 2254(b) and (c).[7]
 
 
 58
 The "exhaustion doctrine is principally designed to protect the state courts' role in the enforcement of federal law and prevent disruption of state judicial proceedings." Rose v. Lundy, 455 U.S. 509, 518 (1982). It "is merely an accommodation of our federal system designed to give the State an initial 'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Wilwording v. Swenson, 404 U.S. 249, 250 (1971) (quoting Fay v. Noia, 372 U.S. 391, 438 (1963)). Thus, if a federal issue has been once fairly presented to the state court, the exhaustion requirement is satisfied. Picard v. Conner, 404 U.S. 241, 275 (1971). "[R]epetitious applications to state courts" are not required. Brown v. Allen, 344 U.S. 443, 448 n. 3 (1953) (unnecessary to present same claim for relief in both state appellate and state post-conviction relief proceedings); accord Castille v. Peoples, 489 U.S. 346, 350 (1989); Keener v. Ridenour, 594 F.2d 581, 584 (6th Cir.1979); see also Smith v. Digmon, 434 U.S. 332, 333-34 (1978) (issue fairly presented even though state court chose not to address it); Harris v. Rees, 794 F.2d 1168, 1173 (6th Cir.1986) (same); Wiley v. Sowders, 647 F.2d 642, 647-48 (6th Cir.), cert. denied, 454 U.S. 1091 (1981) (same).
 
 
 59
 The exhaustion doctrine does not require that a petitioner exhaust all possible avenues of relief in state court. Rather, only those claims for which the petitioner seeks habeas relief need be exhausted. See Rose v. Lundy, 455 U.S. 509, 510 (1982) (holding that when a petition contains both exhausted and unexhausted issues the petition must be dismissed, "leaving the prisoner with the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court").
 
 
 60
 Boggs clearly presented his federal claim to the Ohio Supreme Court at least once, and arguably twice. Although his first Ohio Court of Appeals brief gave his constitutional argument only cryptic treatment,[8] both the Court of Appeals and the Supreme Court explicitly addressed it. Moreover, on his second trip through the appellate process, Boggs clearly set forth his constitutional claim, and presented a lengthy argument in support of it. Indeed, in the briefs he submitted to those courts, Boggs' sole argument concerned the same constitutional claims he makes here.
 
 
 61
 The fact that Boggs could appeal the latest decision of the Ohio trial court denying him relief is irrelevant. That trial court decision was not a ruling on the constitutional violations which Petitioner raises in his petition for habeas corpus relief.
 
 
 62
 Furthermore, any further appeal to vindicate Boggs' federal constitutional rights would in this case clearly be futile. Habeas corpus petitioners are not required to pursue remedies that are clearly futile. Matlock v. Rose, 731 F.2d 1236, 1240 (6th Cir.1984), cert. denied, 470 U.S. 1050 (1985). As the Matlock court explained,
 
 
 63
 The petitioner is encouraged to seek relief from the state courts so as to lessen federal intervention and preserve the proper balance between the state and federal systems. When it is clear that the state court will not "correct" the alleged wrong or "vindicate" the federal right, the return to state court does not further the state's interests.
 
 
 64
 Id.; see also, Lucas v. Michigan, 420 F.2d 259, 261 (6th Cir.1970) (noting that "where the state court [has] already [clearly] ruled contrary to the petitioner's contentions [and] there [is] no indication that the court [is] prepared to depart from its former [ ] decisions", returning to state courts would be futile).
 
 
 65
 In this case, Petitioner has twice brought his constitutional issues to the state's appellate courts. The first time, the court of appeals agreed with Petitioner that his constitutional rights to confront and defend were violated, but that determination was rejected by the state Supreme Court. In his second appeal, the court of appeals deferred to the Ohio Supreme Court's previous ruling and the Supreme Court refused to change its earlier opinion. No state interest would be furthered by requiring Mr. Boggs to ask these same courts to consider the issues a third time. Moreover, in the second appeal, the court of appeals directed Petitioner to proceed with any further constitutional challenge through a federal habeas corpus action.
 
 
 66
 For all of these reasons, we find that the District Court erred in dismissing Boggs' habeas corpus petition for failure to exhaust state remedies. Accordingly, we REVERSE and REMAND this matter to the District Court for consideration of the merits of Boggs' petition.
 
 II.
 
 67
 ROSEN, District Judge. (writing separately).
 
 
 68
 Although the constitutional question itself raised by Boggs in his petition for habeas corpus is not the issue immediately presented for resolution to this Court, given the long history of this case in both the Ohio and federal courts and the fact that the dispute largely concerns questions of law rather than fact, under the circumstances, I believe that it is appropriate to provide the district court with some guidance on the constitutional question. I therefore write this Part II separately for this purpose. I recognize, of course, that the parties should be given an opportunity to present their arguments to the district court.
 
 
 69
 Boggs argues in his habeas corpus petition, as he did before the Ohio courts, that his constitutional right of confrontation was infringed because he was not permitted to cross-examine his accuser before the jury or present evidence about her having previously falsely accused another man of rape.
 
 
 70
 The Ohio Supreme Court's rejection of Boggs' constitutional challenge was predicated upon its determination that cross-examination of a rape victim and the admissibility of extrinsic evidence contradicting the victim's testimony is governed entirely by Evid.R. 608(B). The Ohio court stated:
 
 
 71
 False accusations [of rape], where no sexual activity is involved, do not fall within the rape shield statute. Therefore, a defendant is permitted under Evid.R. 608(B), in the court's discretion, to cross-examine the victim regarding her accusations if "clearly probative of truthfulness or untruthfulness." However, the defendant will be bound by the answers given by the victim.... Thus, if defense counsel inquires of an alleged rape victim as to whether she has made any prior false accusations of rape, and the victim answers no, the trial court would have the discretion to determine whether and to what extent defense counsel can proceed with cross-examination....
 
 
 72
 But, ... under no circumstances would the defense be permitted to introduce extrinsic evidence.... The reason for this is that "a witness may not be impeached by evidence that merely contradicts his testimony on a matter that is collateral and not material to any issue in the trial." ...
 
 
 73
 ... [P]rior false allegations of sexual assault do not tend to prove or disprove any of the elements of rape, nor do they relate to issues of consent. Hence, they are an entirely collateral matter which may not be proved by extrinsic evidence. ...
 
 
 74
 The rights to confront witnesses and to defend are not absolute and may bow to accommodate other legitimate interests in the criminal process.... Evid.R. 608(B) provides a well-established rule of law that protects a legitimate state interest in preventing criminal trials from bogging down in matters collateral to the crime with which the defendant was charged.
 
 
 75
 State v. Boggs, 588 N.E.2d 813, 816-17 (Ohio 1992) (citations omitted and emphasis added).
 
 
 76
 As indicated, the Ohio Supreme Court rejected Boggs' constitutional argument because of its belief that any extrinsic evidence contradicting a rape victim's denial of having previously made false accusations of rape is "collateral", and therefore can be legitimately and constitutionally barred by Ohio Evidence Rule 608(B). I strongly disagree with the Ohio court's reasoning and conclusion.
 
 
 77
 Setting Rule 608(B) considerations aside for a moment, evidence of Ms. Berman's denial of having previously made false allegations, whether or not offered to contradict her denial, is clearly relevant, admissible evidence because it goes to the heart of Boggs' defense that he did not commit the rape with which he was charged. Rule 608(B), which under some circumstances, requires the cross-examiner to "take the answer" given by the witness, does not transform admissible evidence into inadmissible evidence simply because the evidence also contradicts cross-examination testimony and undermines the witness' credibility. Here, the evidence of prior false accusations of rape goes to the heart of the Defendant's right to confront his accuser. Even if he had never cross-examined the alleged victim about prior false accusations of rape, he would be able to offer evidence of this in his case-in-chief.
 
 
 78
 Moreover, even under a straight 608(B) analysis, the evidence should be admitted. Clearly, cross-examination of an alleged rape victim concerning her prior false accusations of rape should be allowed because these are specific instances of untruthful conduct. This is precisely the type of cross-examination contemplated by Rule 608(B). "Specific instances of the conduct of a witness for the purpose of attacking or supporting the witness' credibility ... may, ... if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness ... concerning his character for truthfulness or untruthfulness...." Evid.R. 608(B).
 
 
 79
 More importantly, if the witness denies having previously made false accusations of rape, the defendant is not precluded by Rule 608(B)'s "take-the-answer" doctrine from presenting "extrinsic evidence" showing otherwise. Rule 608(B) addresses only one means of impeachment: impeaching a witness' credibility by showing an untruthful disposition. The rule does not regulate impeachment by contradiction, and the reference in the rule to "extrinsic evidence" does not apply to contradictory counterproof directed to a material issue. See, CHRISTOPHER B. MUELLER & LAIRD C. KIRKPATRICK, EVIDENCE § 6.58 at 663 (1995). Appropriate impeachment by contradiction includes presenting "testimony by another witness that (if credited) rebuts or undercuts or limits, or raises doubts about ... the testimony by an earlier witness ... even though it amounts to 'extrinsic evidence'." Id. at 662.
 
 
 80
 While it is true that well-settled law indicates that extrinsic evidence may not be introduced to contradict cross-examination testimony on a collateral matter, the counterproof involved in this case, i.e., the testimony of other witnesses that Ms. Berman did, in fact, previously falsely accuse another man of rape, is not a "collateral matter". Counterproof is not collateral "if it contradicts on a matter that counts in the case." MUELLER & KIRKPATRICK, supra, § 6.62 at 677. Clearly, evidence that Ms. Berman previously falsely accused another of rape "counts" in this case. This is not merely evidence of unrelated falsehoods, nor is it evidence which is relevant only on the issue of the victim's credibility. Rather, the evidence in this case goes to the heart of the defense, i.e., that the defendant did not commit the rape. Here, the extrinsic evidence (i.e., the testimony of two witnesses concerning prior false accusations made by the accuser) is particularly trenchant given the accuser's history of mental illness involving delusions and psychosis, and the fact that the victim was initially reluctant to name her assailant and did so only after prodding from her mother. Indeed, in this case, the believability, or lack thereof, of the accuser is even more central to resolution of this case because there was no physical evidence of rape and virtually no other corroborating evidence of the Defendant's culpability. Moreover, the victim's physical description of her assailant did not even appear to fit Roger Boggs. Hence, the credibility of the victim's identification and accusation of the Defendant is a fundamental issue.
 
 
 81
 Thus, I believe that, under the circumstances, the contradictory evidence proffered here may well be found to be material because it may undermine the accuser's credibility in the eyes of the jury--and the accuser's credibility is, probably, the most important issue that the jury in this case has to decide. It is particularly probative in this case where the only evidence incriminating the defendant was the victim's testimony.
 
 
 82
 Indeed, the view taken by the Ohio Supreme Court in Boggs has been strongly criticized. As one commentator observed:
 
 
 83
 It is a generally accepted rule of evidence that an attorney seeking to impeach a witness's character for truthfulness may cross-examine the witness about prior, unrelated lies and misrepresentations, but may not offer extrinsic evidence to prove the witness in fact uttered those falsehoods. The rules permit these questions to enable counsel to probe a witness's character for truthfulness, but ban extrinsic proof because unrelated falsehoods are collateral to the issues being tried. On the other hand, it is also a generally accepted rule that evidence that a person behaved in an unusual and idiosyncratic manner on a prior occasion is admissible to suggest that he or she behaved the same way and with the same state of mind on the similar occasion in question. The issue then is which rule to apply to evidence that on a prior occasion the complainant falsely accused someone of a sex offense.
 
 
 84
 To falsely accuse a man of rape is quite a different thing than exaggerating one's qualifications on a job application, fudging on a loan application, or the like. A false rape accusation reveals a flaw in character of a particular, and particularly dangerous, kind. Its relevance, in a case where the key question is whether the complainant is lying about rape this time, is palpable. Accordingly, ... the prevailing, and correct, view is that if the complainant denies making the prior accusation or denies that it was false, the defendant may offer extrinsic evidence to establish these facts.
 
 
 85
 Clifford S. Fishman, Consent, Credibility and the Constitution: Evidence Relating to a Sex Offense Complainant's Past Sexual Behavior, 44 CATH.U.L.REV. 709, 776-77 (1995) (footnotes omitted).
 
 
 86
 This view is reflected in other court decisions. As the Michigan court observed in People v. Mikula:
 
 
 87
 In a prosecution for a sexual offense, the defendant may cross-examine the complainant regarding prior false accusations of a similar nature and, if she denies making them, submit proof of such charges. In a case such as the one before us, where the verdict necessarily turned on the credibility of the complainant, it is imperative that the defendant be given an opportunity to place before the jury evidence so fundamentally affecting the complainant's credibility.
 
 
 88
 269 N.W.2d at 198-99 (citations omitted and emphasis added).
 
 
 89
 Similarly, in United States v. Stamper, 766 F.Supp. 1396 (W.D.N.C.1991), aff'd, 959 F.2d 231 (4th Cir.1992), the court observed:
 
 
 90
 Evidence of prior false allegations is so probative of the central issue in a rape case that to exclude it might deny evidence critical to the defense. This is particularly true where, as in this case, there is a complete void of physical evidence of rape and the jury has nothing to rely on but the diametrically opposed versions of the event put forth by the complainant and the accused.
 
 Id. at 1405 (citations omitted.)
 
 91
 In Stamper, a rape victim had previously accused three other men of rape. The defendant sought to cross-examine the victim concerning her prior accusations and also sought to admit the testimony of the three prior accusees that the accusations against them were false. There was no physical evidence of rape, whatsoever, and the only evidence the Government had incriminating the defendant was the victim's testimony. In light of the lack of physical evidence of rape in the case, the Stamper court determined that the Sixth Amendment mandated that cross-examination of the victim and the testimony of the accusees be allowed:
 
 
 92
 The lack of physical evidence of rape in the instant case makes complainant the "crucial" witness, in that the accuracy and truthfulness of her testimony are the key elements in the Government's case.... In order to confront the complainant effectively, to elucidate the facts and legal issues here in question fully, and to present a defense in a constitutionally viable trial, Defendant must be allowed to set before the jury the proffered evidence of ulterior motives of the complainant. The sixth amendment and Davis[9] mandate that the proffered evidence be admitted.
 
 
 93
 Id. at 1400.
 
 
 94
 In a case similar to this one, Judge Nelson of this Court observed in a concurring opinion affirming the district court's grant of a habeas corpus petition in Lemmon v. State of Ohio,
 
 
 95
 The highly unusual facts of this case suggest to me that the state trial court's improper exclusion of evidence that the alleged victim had a history of making false charges of rape "probably resulted in the conviction of one who is actually innocent." See Murray v. Carrier, 477 U.S. 478, 496 (1986)....
 
 
 96
 955 F.2d at 560 (Nelson, J. concurring).
 
 
 97
 Similarly, I believe that, under the facts of this case as presented in the record submitted to this Court, it appears that the exclusion of evidence of Ms. Berman's prior false accusations of rape may well have been erroneous. To deprive the Defendant of the right to present material evidence contradicting the victim is not only to deprive the Defendant of his constitutional rights to cross-examine his accuser and to mount an effective defense, it is also to potentially undermine the jury's fact-finding responsibilities.
 
 
 98
 By this discussion, I do not mean to suggest that the Ohio "collateral evidence rule" is patently unconstitutional in sexual assault cases involving allegations by a defendant of prior false accusations. Rather, I believe that a blanket per se rule that, as a matter of law, evidence concerning prior false accusations made by a sexual assault complainant is "collateral" and, hence always inadmissible, is not constitutionally permissible, as such a rule could, in some circumstances, violate a defendant's Sixth Amendment confrontation rights. A determination as to whether such evidence is collateral or material must be made on a case-by-case basis, considering the facts and circumstances of each particular case. See e.g., Chambers v. Mississippi, 410 U.S. 284, 93 S.Ct. 1038, 35 L.Ed.2d 297 (1973). In Chambers, one of the defendant's witnesses had confessed to a crime but later repudiated that confession. Id. at 287-88. Based upon a per se application of a state common law rule, the trial court denied the defendant's request to cross-examine the witness concerning his confession. Id. at 291. The U.S. Supreme Court held that a per se application of the state rule without regard to the circumstances of the particular case resulted in a denial of the defendant's constitutional rights. Id. at 294-97.[10]
 
 
 99
 Therefore, on remand, the District Court should conduct a hearing, including consideration of the testimony of the two witnesses, to consider the particular circumstances concerning Ms. Berman's identification of Roger Boggs and the attendant credibility issues discussed above to determine whether Petitioner's confrontation rights have been violated.
 
 
 100
 BATCHELDER, Circuit Judge, concurring.
 
 
 101
 I write separately only to emphasize my strong belief that because the underlying constitutional question in this case is not before us, as Judge Rosen explicitly acknowledges in his separate opinion. We ought not to address that issue or to instruct the district court how it should analyze and ultimately rule on it.
 
 
 
 *
 The Honorable Gerald E. Rosen, United States District Judge for the Eastern District of Michigan, sitting by designation
 
 
 [1]
 The sentencing court determined that the rape and kidnapping charges were allied offenses of similar import, and therefore, sentenced Boggs on the rape charge alone. See, State v. Boggs, No. CA-494, 1991 WL 13735 (Ohio Ct.App. Jan. 24, 1991)
 
 
 [2]
 That law states:
 Evidence of specific instances of the victim's sexual activity, opinion evidence of the victim's sexual activity, and reputation evidence of the victim's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, disease, or the victim's past sexual activity with the offender, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value.
 OHIO REV.CODE ANN. § 2907.02(D) (Anderson 1989).
 
 
 [3]
 The court stated:
 [T]he court below failed to make the critical distinction between that which is "sexual activity" within the meaning of R.C. 2907.02(D) and that which is an "accusation of criminal conduct." Although both of these may arise in a sexual context, the admission of evidence concerning the making of prior criminal accusations does not impermissibly "put on trial" the issue of a rape victim's alleged promiscuity as forbidden by R.C. 2907.02(D). Boggs, 1991 WL 13735 at * 7.
 
 
 [4]
 The State subsequently moved for reconsideration arguing that if the trial court erred by denying Boggs the right to question his accuser about a prior rape accusation, the error was harmless, because she would have denied making the allegation, and Boggs would have been precluded from introducing extrinsic evidence concerning it by Ohio Evidence Rule 608(B). Like Federal Rule of Evidence 608(b), the Ohio rule forbids the introduction of extrinsic evidence to prove specific instances of conduct by a witness for the purpose of attacking the witness' credibility. The Ohio Court of Appeals rejected this argument, holding that Rule 608(B) operates to exclude evidence of a "purely collateral matter which is not relevant to a material issue in the case." State v. Boggs, No. CA-494 (Ohio Ct.App. Mar. 28, 1991), p. 3. The court determined that evidence of a prior false rape accusation is not a collateral matter:
 We cannot characterize any such proclivity on the part of a rape claimant to make rape accusations as an "extraneous" or "collateral" matter which is not "relevant" in a rape trial. Indeed, it is difficult to imagine a more imperative category of defense evidence. (Citation omitted).
 Id. at 4.
 The court further explained:
 [E]videntiary rules must sometimes, in the prosecution of sexual offenses, yield to a defendant's right of cross-examination under the confrontation clause of the Sixth Amendment to the United States Constitution. (Citations omitted.) Thus, we are not entirely persuaded that Ohio Evid.R. 608(b) would prohibit appellant from introducing impeachment evidence below if the alleged victim denies having previously made the rape accusations.
 In any event, we hold that appellant was entitled to cross-examine the witness on this matter before a jury which is in the best position to determine the credibility of her response.
 Id. at 5.
 
 
 [5]
 The "Lemmon case" referred to in the opinion is Lemmon v. Ohio, No. 5:91 CV 0156, 1992 WL 551565 (N.D.Ohio Feb. 19, 1992), aff'd, 985 F.2d 560, No. 92-3284, 1993 WL 15164 (6th Cir. Jan. 22, 1993). In Lemmon, the court held that a defendant accused of rape is denied his constitutional right of confrontation when he is not allowed to explore the alleged victim's past history of making false and unsubstantiated charges of sexual misconduct
 
 
 [6]
 Boggs phrased his position in the brief he submitted to the Ohio Supreme Court as follows:
 In the trial of a sex offense case, a defendant's federal constitutional rights to confrontation, cross-examination, presentation of a defense and due process of law are denied when a trial court refuses to allow cross-examination and testimony that an alleged rape victim has made prior false accusations of sexual misconduct.
 
 
 [7]
 28 U.S.C. § 2254 states:
 (b) An application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the State, or that there is either an absence of available State corrective process or the existence of circumstances rendering such process ineffective to protect the rights of the prisoner.
 (c) An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.
 
 
 [8]
 The ultimate claim may be the same despite variations in the legal theory or factual allegations urged in its support, Picard, 404 U.S. at 277; and the federal habeas applicant need not cite specific constitutional provisions before the state court. Id. at 278
 
 
 [9]
 Davis v. Alaska, 415 U.S. 308 (1974). In Davis, the Supreme Court held that the confrontation clause of the Sixth Amendment mandated the admission of evidence concerning a juvenile offender's criminal records which by statute, Alaska protected from disclosure
 
 
 [10]
 Analogously, the Supreme Court also struck down an Arkansas per se rule excluding hypnotically refreshed testimony of any criminal defendant. Rock v. Arkansas, 483 U.S. 44 (1987). The Court acknowledged that the state has an interest in excluding irrelevant or unreliable evidence. Id. at 61. However, the Court counseled that a per se rule which precludes all such evidence, could, in some circumstances, violate a defendant's constitutional right to testify: "A State's legitimate interest in barring unreliable evidence does not extend to per se exclusions that may be reliable in an individual case." Id